DONNA M. SLICK,                     )
                                    )
                                    )     No. 12 C 2562
              Plaintiff,            )
                                    )
    v.                              )     Judge Thomas M. Durkin
                                    )
PORTFOLIO RECOVERY ASSOCIATES, LLC, )
                                    )
                                    )
              Defendants.           )

## MEMORANDUM OPINION AND ORDER

Donna M. Slick is seeking damages from Portfolio Recovery Associates, LLC ("PRA") for various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. R. 27. Slick's amended complaint contains only one count, but that single count encompasses at least seven different alleged violations of the statute as a result of three different letters that PRA sent to Slick and various phone conversations PRA had with an employee at Slick's bank. Slick has filed a motion for partial summary judgment on liability. R. 73. In response, PRA filed its own motion for summary judgment on all the claims in the single count. R. 96. For the following reasons, Slick's motion is granted, and PRA's motion is denied.

## BACKGROUND

Slick owned a Capital One credit card and ran up a balance into the tens of thousands of dollars. R. 106 ¶¶ 1-2.[1] She claims that the majority of the charges

---

[1] Slick contends that PRA did not timely respond to her Requests for Admission under Federal Rule of Civil Procedure 36(a)(3), so her requests should be deemed

were for "personal, family, and household purchases." R. 90 ¶ 15. To pay off the balance, Slick made payments on the account on September 2, 2003; September 18, 2003, and November 1, 2003. R. 106 ¶ 4. However, the balance was never paid off in full, and Capital One first reported the account as delinquent on December 2, 2003, which means Slick had failed to timely pay her bill. *Id.* ¶ 24. Slick made additional payments on January 2, 2004; February 18, 2004; March 22, 2004; April 20, 2004; June 5, 2004; June 28, 2004; and a final payment July 28, 2004, *id.* ¶ 4, though her account remained delinquent as a balance still remained, 90 ¶ 14. Slick's credit report indicates that Capital One "charged-off"[2] Slick's account on December 3, 2004. *Id.* ¶ 10.

PRA, a company that owns and collects past-due debts, purchased Slick's Capital One account on July 28, 2011. R. 106 ¶ 3. The balance on the account was $19,403.17. *Id.* On August 9, 2011, PRA mailed Slick a letter—it's "initial communication," *see* 15 U.S.C. 1692g—in an attempt to collect on the account. R. 90 ¶ 13; *see* R. 1-3. The letter informed Slick that PRA had purchased her account from Capital One and that she owed $19,403.17. R. 90 ¶ 14; R. 106 ¶ 3. It also stated,

---

admitted. Given the Court's determination on liability and damages (as explained below), the issue is moot because the result is the same regardless of whether the requests are admitted.

[2] "A charge-off or chargeoff is the declaration by a creditor (usually a credit card account) that an amount of debt is unlikely to be collected." "Charge-off," *Wikipedia*, http://en.wikipedia.org/wiki/Charge-off (last visited August 19, 2014).

"This letter is from a debt collector and is an attempt to collect a debt," R. 75-1,[3] and further provided:

> NOTICE: If this account is eligible to be reported to the credit reporting agencies by our company, we are required by law to notify you that a negative credit report reflecting on your credit records may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

R. 90 ¶ 16. At the time PRA sent the letter, more than 7 years and 180 days had passed since Slick's Capital One account was reported as delinquent on December 2, 2003—7 years and 180 days after December 2, 2003, was June 3, 2011. *Id.* ¶ 25. June 3, 2011, is an important date because under 15 U.S.C. § 1681c, a credit reporting agency may not list a delinquent account on a credit report more than 7 years and 180 days after certain triggering dates, including the date on which an account is reported as delinquent. Slick alleges that she received PRA's letter on August 16, 2011, R. 27 ¶ 10, though neither party's Local Rule 56.1 statement of material facts provides the exact date. *See* R. 90; R. 105.

On August 31, 2011, Slick mailed a letter to PRA, in which she disputed that she owed the debt described in PRA's letter dated August 9, 2011. R. 90 ¶ 31; *see* R. 75-1. She also asked "for a complete breakdown of [the] balance of $19,403.17." *Id.* ¶ 34. PRA received the letter two days later on September 2, 2011. R. 90 ¶ 32. The letter was processed and logged into PRA's collection records on the following business day, September 6, 2011. *Id.* ¶ 36.

---

[3] The copy of the letter provided to the Court is not entirely legible. *See* R. 75-1.

Sometime prior to PRA processing the letter,[4] Slick went to her personal bank, Columbia Bank, and showed Debi Louden, a bank employee, the letter. R. 106 ¶ 33. Slick testified she did this because she "just wanted to be honest" and because she was "applying for a refinance." *Id.* ¶ 44. On August 30, 2011, Louden placed a call to PRA at 9:00 a.m. *Id.* ¶ 32.[5] "Sarah" answered the call. *Id.* ¶ 33. Louden told Sarah that she was calling on behalf of "a mutual customer [who] is really upset because she said that . . . she only owed them like $900," even though the stated balance was roughly $19,000. *Id.* Sarah told Louden that she could not release account information over the phone and that Slick would need to send a letter requesting a breakdown of the balance. *Id.*

On September 1, 2011, Louden, with Slick physically present and listening to the call, placed a second call to PRA at approximately 2:49 p.m. and reached James Simmons, a PRA customer service representative. R. 90 ¶ 38; R. 106 ¶ 33. At the beginning of the phone conversation, Slick gave PRA permission to speak with Louden about her account. R. 106 ¶ 35. Simmons then informed Louden that the original balance was $8,338.66—the rest was the result of accrued interest and late fees—and that Slick could possibly "settle the account" for $9,700 or through a one-time payment of the original balance. *Id.* At some point, "Mr. Medina," Simmons's manager, got on the call to discuss Slick's ability to pay and closing out the account. *Id.* The parties discussed certain options, and Louden asked for an "arrangement

---

[4] The exact date is unclear, and the parties do not specify in their 56.1 statements when this occurred.

[5] All of the calls to PRA were recorded. R. 106 ¶ 30.

letter" that said "if [Slick] makes [the] payment of $9,701.59[,] . . . that will close out [Slick's] account." *Id.* Mr. Medina asked if he would receive payment by September 5, 2011, to which Loudin responded that it might take a little longer to make the payment, but she would call back with a specific date. *Id.* The phone call ended after Mr. Medina said he would fax Louden the letter. *Id.*

Roughly 15 minutes after Louden placed the second call to PRA, Louden placed a third call to PRA at 3:03 p.m., which was answered by "Mrs. Burton." *Id.* ¶ 36. No evidence has been set forth, and no contention has been made, that Slick was with Louden at the time or listening to the third call. Louden explained that she had previously spoken to Simmons and Mr. Medina and was awaiting a fax describing the settlement terms. *Id.* ¶ 37. Mrs. Burton told Louden to hold while she contacted the manager. *Id.* Without warning, the call ended a moment later. *Id.*

Louden made a fourth call to PRA at 3:11 p.m. *Id.* ¶ 38. "Renee" answered the call, and Louden explained that she was still waiting for the fax. *Id.* ¶ 39. A woman named "Robin" got on the line and told Louden that the fax machines were down. *Id.* The call ended without warning shortly thereafter. *Id.*

Louden placed a fifth call to PRA at 3:15 p.m. *Id.* ¶ 40. Speaking to "Kimberly," Louden stated that she had spoken to about four people in trying to reach Mr. Medina and was waiting for the settlement letter to be faxed. *Id.* ¶ 41. Mr. Medina got on the line at some point and informed Louden that he would send the fax later that day by 5:00 p.m. *Id.* Louden had mistakenly been of the opinion that Mr. Medina was going to immediately fax over the letter after the first call she

made that day ended (i.e., the second call overall to PRA). *Id.* The letter, addressed to Slick and dated September 1, 2011, was eventually faxed to Louden that day. R. 83 at PRA 009. It provided in pertinent part, "This letter confirms your arrangement to make the following payment(s) to settle this account. Payment in the amount of $9,701.59 is due by 9/7/2011." *Id.*

The next day, on September 2, 2011, Louden placed another call to PRA at 2:50 p.m. *Id.* ¶ 42. This was her sixth (and final) call to PRA. Louden told "Ms. Patner," the PRA representative who answered the call, that she had received the faxed settlement letter for Slick but that there was a mistake on the fax. *Id.* ¶ 43. Ms. Patner asked Louden if Slick was on the line, Louden said, "No, she is not," and then Ms. Patner asked Louden what the error was. *Id.* Louden said that the faxed letter required Slick to pay the full $9,701.59 amount by Monday, September 7, 2011, which Slick could not do because that was the Monday of Labor Day weekend and the bank was closed. *Id.* Louden further stated that Mr. Medina had informed her that Slick only needed to make payment by the end of the month. *Id.* Ms. Patner attempted to transfer Louden to the people whose names appeared on the fax— Jarret Wynter and Joanna Stenson—but they were unavailable. *Id.* The call ended after Ms. Patner told Louden that she would have her manager send Louden a fax with the correct date of September 30, 2011, so that Louden would "have that in black and white." *Id.*

On September 7, 2011, PRA sent another letter to Slick via Louden. R. 90 ¶ 46. The letter included the following relevant information:

Dear DONNA M SLICK:

Your account was purchased on 7/28/2011 from CAPITAL ONE BANK, N.A. This letter confirms your arrangement to make the following payment(s) to settle this account.

Payment in the amount of $9,701.59 is due by 9/30/2011

Should you miss any of the payments described herein, this payment plan may become null and void.

If you complete this payment plan and our company is reporting our company's trade line for this account to the three major credit reporting agencies, our company will report this as settled.

R. 75-6. The letter further stated, "This letter is from a debt collector and is an attempt to collect a debt. Any information obtained will be for that purpose." *Id.*

Slick never made any payments on the account. R. 83 at PRA 006-10. Instead, she filed this suit against PRA on April 2, 2012, asserting claims for a violation of the FDCPA. R. 1. On May 15, 2012, PRA made an offer of judgment pursuant to Federal Rule of Civil Procedure 68 in the amount of $1,200. R. 91-4. Slick rejected the offer.

## LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the non-moving party must produce more than a "mere scintilla of evidence," meaning "evidence on which [a] jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (2013) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In ruling on the motion, the Court considers the entire evidentiary record and "view[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party." *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013); *Egan Marine Corp. v. Great Am. Ins. Co.*, 665 F.3d 800, 811 (7th Cir. 2011).

## ANALYSIS

The parties have filed cross motions for summary judgment—Slick on liability and PRA on both liability and damages. PRA alternatively contends that the case is moot because Slick is not entitled to actual damages, so its $1,200 offer of judgment gave Slick everything she requests in this lawsuit.

## I. Liability

The FDCPA is aimed at combatting "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Slick's one-count complaint is difficult to follow because it lumps together numerous claims involving different acts and alleged violations of various FDCPA provisions. *See* R. 27. In essence, however, the claims can be broken down into three groups: (1) claims resulting from the three letters PRA sent to Slick (dated August 9, September 1, and September 6, 2011); (2) claims resulting from five of PRA's calls with Louden (excluding the initial call on September 2, 2011, when Slick was on the line); and (3) claims attributable to both the letters and the calls. The Court is only required to address the first group of claims to resolve this motion.[6]

---

[6] The Seventh Circuit has not yet addressed the issue of whether a party can

## A. Applicability of the FDCPA

Only debt collectors may be liable for a violation of the FDCPA. *See* 15 U.S.C. §§ 1692e, 1692f; *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 537 (7th Cir. 2003) (distinguishing between debt collectors, who are subject to the FDCPA, and creditors, who are not). Accordingly, to recover damages for a violation of the FDCPA, a plaintiff must demonstrate that the defendant was a "debt collector," as defined in 15 U.S.C. § 1692a(6), and that the defendant was trying to collect a "debt," as defined in 15 U.S.C. § 1962a(5). PRA generally disputes the paragraphs in Slick's 56.1 statements of material fact that it is a debt collector and that it was collecting a debt. *See* R. 90 ¶¶ 2-3. However, the uncontroverted evidence belies PRA's contention. Slick testified that the charges on her Capital One account were for "personal, family, and household purchases." R. 90 ¶ 15. That satisfies the definition of debt under the FDCPA. *See* 15 U.S.C. § 1692a(5). Furthermore, the Seventh Circuit stated in *McKinney v. Cadleway Properties, Inc.*, that "the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself." 548 F.3d 496, 501 (7th Cir. 2007). PRA purchased Slick's account from Capital One, R. 106 ¶ 3, and sent letters to Slick and made attempts to collect the amount owed from Slick, *see, e.g. id.* ¶¶ 32,

---

recover statutory damages for more than one violation of the FDCPA in a single cause of action. But the courts that have addressed it have explained that statutory damages are capped at $1,000 per *case*, not per *violation* of the FDCPA. *See Smith v. Greystone Alliance, Inc.*, No. 09 C 5585, 2014 WL 1097701, at *3 (N.D. Ill. Mar. 20, 2014). It therefore does not matter in what way, or how many times, PRA violated the FDCPA because PRA's liability under the statute is determined with *one* violation. Because the Court finds that PRA violated the statute when it sent the letters to Slick, none of the other claimed violations affect PRA's liability.

42; R. 90 ¶¶ 14, 77. It also affirmatively stated in the letters that the "letter [was] from a debt collector and [was] an attempt to collect a debt." *E.g.* R. 75-1. Any argument that the FDCPA does not apply to PRA here or that it was not attempting to collect a debt fails.

**B.    Violation of the Statute**

15 U.S.C. § 1692e states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." To succeed on a claim under Section 1692e, Slick must prove that PRA's statements were false or misleading *and* material. *Hahn v. Triumph P'ships*, 557 F.3d 755, 757 (7th Cir. 2009).

**1. False or Misleading Statements**

PRA's first letter to Slick provides:

> If this account is eligible to be reported to the credit reporting agencies by our company, we are required by law to notify you that a negative credit report reflecting on your credit records may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

R. 90 ¶ 15. The second and third letters sent to Slick both stated, "If you complete this payment plan and our company is reporting our company's trade lines for this account to the three major credit reporting agencies, our company will report this account as settled." *Id.* ¶¶ 46, 70. The "notice" provision on the back of the letters also described PRA's obligation to report account information to the credit bureaus. *Id.* ¶ 16. Slick claims that PRA violated 15 U.S.C. §§ 1692e—specifically, Sections 1692e(5) and 1692e(10)—when it sent her the three letters because, in each of the

letters, "PRA falsely implied . . . that it could legally furnish information regarding [her] account to the credit bureaus," when in fact, it could not do so since the time period for reporting had already expired.[7] R. 96 at 2. Indeed, Section 1692e(5) provides that it is a violation of the statute for a debt collector to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken." Similarly, Section 1692e(10) says that it a violation of the statute to "use any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." The issue is thus whether PRA's statements that, first, it could legally report Slick's failure to pay the debt to a credit reporting agency and, second, that the failure could appear on her credit report, were false. Slick contends that her debt was time-barred and obsolete, so therefore, PRA could not report the debt and it could not appear on her credit report. PRA disagrees, contending that the time period for Slick's debt to be obsolete had not yet passed, so its assertions in the letters were neither false nor misleading. R. 107 at 2.

15 U.S.C. § 1681c guides the Court's analysis. First, a consumer report may not contain "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years." § 1681c(a)(4). The section further provides:

---

[7] 15 U.S.C. § 1692f states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." For completeness, the Courts notes Slick's claim that PRA violated 15 U.S.C. § 1692f when it sent the letters, but it is not required to undertake an analysis of the claim for the same reasons discussed in footnote 6.

> The 7-year period referred to in [§ 1681c(a)(4)] shall begin, with respect to any delinquent account that is placed for collection (internally or by referral to a third party, whichever is earlier), charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action.

§ 1681c(c)(1). The Seventh Circuit has explained that the "effective result [of the statute] is a seven and one-half year period from the original delinquency." *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 940 (7th Cir. 2007).

It is undisputed that Capital One listed the date of first delinquency on Slick's account as December 2, 2003. R. 90 ¶ 24. It is also undisputed that Capital One charged off Slick's account on December 3, 2005. R. 106 ¶ 11. In light of these dates, Slick contends that based on the language in § 1681c(c)(1), her debt became unreportable (also referred to as being obsolete) 7 years and 180 days after December 2, 2003, the date on which her account was listed as delinquent—i.e., June 3, 2011.[8] Conversely, PRA argues that the clock began to run on December 3, 2005, the date Capital One charged off the account, so Slick's account did not become obsolete until 7 years and 180 days after December 3, 2005—i.e., June 3, 2012. But PRA's argument is puzzling. The specific language in the statute says the 7-year period "shall begin" and then lists certain triggering activities. The *first* date that falls on the list is the date on which Capital One listed the account as delinquent: December 2, 2003. PRA offers no support for its argument that the later

---

[8] Slick's counsel incorrectly calculated the date as May 29, 2011, in a deposition question that he asked PRA's Rule 30(b)(6) deponent, Tara Privette. *See* R. 80 at 84:9-18.

date of December 3, 2005, should be the operative date which triggers the clock.

Privette even contradicts its assertion:

> Privette: So again, ideally, we get the date of *first delinquency* from the seller, then we calculate the time that we have to report based *on that date.* So I believe that the time frame – I believe the time frame is seven years, and I know that we calculate a more conservative amount of time. I believe it's six years, nine months.
>
>                                                \* \* \*
>
> Counsel: [Y]ou just said that PRA had all the information it needed to make this determination, whether or not the debt became delinquent more than 7 years and 180 days prior to the date the defendant sent the first letter, correct?
>
> Privette: I have told you that the date that we received from the seller was the December 2, I believe December 2nd date, and that's what we used to base our calculation on.

R. 80 at 65:10-16 (emphasis added), 81:14-23. Accordingly, December 2, 2003, is the date on which the clock began to run, and June 3, 2011, is the date on which no information regarding Slick's debt at issue could have been listed on her credit report.

While the motion here was pending, the Seventh Circuit decided the case *McMahon v. LVNV Funding LLC,* 744 F.3d 1010 (7th Cir. 2014). The issue before the court was a denial of a motion to dismiss, but its explanation of how the FDCPA applies to a dunning letter involving a time-barred debt like those at issue here is applicable:

> We do not hold that it is automatically improper for a debt collector to seek repayment of time-barred debts; some people might consider full debt repayment a moral obligation, even though the legal remedy for the debt has been extinguished. But, as we held in [*Phillips v. Asset*

*Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013)], if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believe that the debt is legally enforceable, regardless of whether the letter actually threatens litigation . . . , the collector has violated the FDCPA.

*Id.* at 1020. In light of that analysis, and because it is undisputed that the three letters PRA sent to Slick were sent after June 3, 2011, the information contained in the letters was both false and misleading, as well as implied that PRA could take action it was legally prohibited from doing. PRA violated the FDCPA, and the first element for a claim under Section 1692e is satisfied.

### 2. Materiality

A false statement on a dunning letter does not automatically violate the FDCPA. *Ruth v. Triumph P'ships*, 577 F.3d 790, 799-800 (7th Cir. 2009). A plaintiff must demonstrate that "even a false statement would mislead or deceive the unsophisticated consumer." *Id.* This "hypothetical" unsophisticated consumer "is not as learned in commercial matters as are federal judges, but neither is he completely ignorant." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). The unsophisticated consumer "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Id.* (citations omitted).

PRA contends that Slick has not put forth evidence to support a conclusion that the false or misleading statements in its letters misled Slick, let alone could mislead the unsophisticated consumer. R. 96 at 6-10. It argues, first, that Slick's

deposition testimony, in which Slick stated she contacted her bank about the letter because she "just wanted to be honest" and because she was "applying for a refinance," R. 106 ¶ 44, and second, that Slick's failure to provide any extrinsic evidence requires summary judgment to be granted in PRA's favor on the materiality issue. PRA's first argument, that Slick may not have *actually* been misled, is immaterial. "[I]t is unimportant whether the individual that actually received a violative letter was misled or deceived." *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012). Instead, it must be the hypothetical unsophisticated consumer who *can* be misled. Nevertheless, PRA's second argument requires further consideration.

To determine whether extrinsic evidence is necessary for Slick to meet her burden of demonstrating materiality, the Seventh Circuit has created three distinct categories of FDCPA cases. "In the first category are cases involving statements that plainly, on their face, are not misleading or deceptive." *Ruth*, 577 F.3d at 800. In those cases, summary judgment is granted to the defendant based on the court's determination that the statement complied with the law. *Id.* That situation is not present in this case. "The second category of cases involves statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer." *Id.* In these cases, a plaintiff may only satisfy her burden by "producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* (citing *Hahn v. Allied Int'l Credit Corp.*, 557 F.3d 755, 757 (7th Cir.

2009); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007); *Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007)). However, in a third category of cases, i.e., cases "involving plainly deceptive communications," the Court will "grant summary judgment for the plaintiffs without requiring them to prove what is already clear." *Ruth*, 577 F.3d at 801. The question here is whether the statements in the letters here fall into category two or category three.

It is evident from the letters' face that they are plainly deceptive and, therefore, fall into category three. As was the case in *Gonzales v. Arrow Financial Services*, there was no circumstance here under which PRA could have legally reported Slick's obsolete debt to a credit bureau even though the letters implied the contrary. 660 F.3d 1055, 1063 (9th Cir. 2011) (affirming a district court's grant of summary judgment in favor of a plaintiff for a violation of 15 U.S.C. § 1962e, even though no extrinsic evidence was provided, because the debt collector's letter implied that it could report a time-barred debt). Privette even conceded that PRA made a decision on or around August 8, 2011, when Slick's account was loaded into its computer system, that PRA would not report Slick's account to a credit agency.[9] R. 80 at 26:20-27:13. Those facts alone demonstrate the language in the letters is misleading and plainly deceiving.

Furthermore, the letters here are no less "plainly deceptive" than a letter

---

[9] A printout of PRA's computer entries for Slick's account demonstrates that an entry was made on October 21, 2011, that Slick's debt information was "not reported" to a credit bureau because "Contract Date/Date of First Delinquency [were] too old." R. 83 at 25 (PRA 008).

including an inaccurate amount of the debt a person owed, which district courts have held to be material without extrinsic evidence. *See Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 997 (E.D. Wis. 2013). The letters PRA sent undeniably create the impression that PRA could take steps that would negatively affect Slick's credit report should she fail to pay the obligation alleged or satisfy the settlement offer. And if that same language was provided to the unsophisticated consumer, the supposed ramifications of one's decision to pay would undoubtedly affect the person's payment decision. This is no different than a person who might factor in the amount he owes when choosing to pay or forego payment. Both types of misleading and deceptive information (i.e., an inaccurate amount of debt owed and a false threat to report a debt to a credit bureau) are significant, as well as presented upfront and without reservation—e.g., they are not buried in the letter nor are the specifics of the "threatening" and misleading language explained. Accordingly, the letters at issue here are "plainly deceptive," and Slick is not required to present extrinsic evidence to satisfy the materiality element.

Because the language in the letters constitutes a violation of 15 U.S.C. 1692e and is also material, Slick is entitled to summary judgment on liability.[10]

## II. Damages

The FDCPA permits an individual to recover statutory damages in an amount up to $1,000, plus "the costs of the action, together with a reasonable

---

[10] PRA only argues that it is entitled to the bona-fide error defense, 15 U.S.C. § 1692k(c), on Slick's Section 1692g claims, so the Court is not required to analyze the defense in conjunction with Slick's claims based on the letters and Section 1692e.

attorney's fee as determined by the court." *See* 15 U.S.C. § 1692k(a)(1), (3); *Raimondi v. McAllister & Assocs., Inc.*, 50 F. Supp. 2d 825, 828 (N.D. Ill. June 15, 1999) (citing *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994) ("Congress intended to limit 'other damages' to $1,000 per proceeding, not to $1,000 per violation."); *Harper v. Better Bus. Servs., Inc.*, 961 F.2d 1561, 1563 (11th Cir. 1992) (same)). The Court has determined that PRA is liable for violating the FDCPA, so a jury will need to determine the amount of statutory damages to which Slick is entitled.

Central to this case, however, are two important additional facts: (1) a plaintiff may also be entitled to actual damages for a violation of the FDCPA, *Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir. 2003); and (2) PRA tendered a settlement offer to Slick in the amount of $1,200 plus attorney's fees and costs, R. 91-4. These considerations are relevant to the cross-motions for summary judgment because PRA contends that Slick is not entitled to actual damages.[11] And relying on that assertion being true, PRA argues that it satisfied the requirements of an "offer of judgment" pursuant to Rule 68, thereby mooting the case, because the $1,200 offer gave Slick everything she could recover.[12] *See* Fed. R. Civ. P. 68; *Scott v. Westlake Servs. LLC*, 740 F.3d 1124, 1126 (7th Cir. 2014) ("Under this circuit's case law, an

[11] "Actual damages" is a broad term that may encompass many types of monetary awards, including lost wages, medical bills, and emotional distress. Slick only alleged actual damages resulting from emotional distress, as opposed to those involving exact numbers or calculations, such as lost wages or medical bills.

[12] Because statutory damages may not exceed $1,000, PRA contends that it tendered more than the full amount of statutory damages Slick could recover ($1,200) plus reasonable attorney's fees and cost arising from the filing of this suit. R. 96 at 22-23.

unaccepted settlement offer can render the plaintiff's case moot if it gives the plaintiff everything she requested (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011); *Gates v. City of Chi.*, 623 F.3d 389, 413 (7th Cir. 2010)).

## A. Mootness

PRA's mootness argument must be addressed first. In *Scott v. Westlake Services LLC*, a case the Seventh Circuit decided while this motion remained pending, the court confronted the issue of whether a settlement offer at the beginning of a Telephone Consumer Protection Act lawsuit mooted the case. 740 F.3d at 1125-26. In determining that the offer did not moot the case, the court explained that when a "defendant offers to pay *only what it thinks might be due*, the offer does not render the plaintiff's case moot." *Id.* at 1126 (citing *Gates v. Towery*, 430 F.3d 429, 431-32 (7th Cir. 2005)) (emphasis added). The rationale behind this principle is that a plaintiff still has something at stake throughout the course of the litigation, regardless of whether the plaintiff may ultimately fail. *Id.* Put differently, though the chances of obtaining the additional relief sought may be slight, a court's jurisdiction is not premised on a party's likelihood of success in the future. *Scott*, 740 F.3d at 1126-27 ("To hold otherwise would imply that any reasonable settlement offer moots the plaintiff's case or that long-shot claims are moot rather than unlikely to succeed. 'That's not the way things work: a bad theory (whether of liability or of damages) does not undermine federal jurisdiction.'" (quoting *Gates*, 430 F.3d at 432) (internal citation omitted)). In essence, if a court at some point down the road—long after the initial settlement offer has been made and time for

accepting it under Rule 68(a) has passed—has to make a judicial determination that demonstrates the initial offer satisfied the entirety of the plaintiff's demand, the initial offer does not moot the case.

Applying that legal framework to PRA's settlement offer here, it is clear the case is not moot. PRA's offer satisfied the maximum statutory damages, but the remaining $200 did not necessarily satisfy the actual damages that Slick claimed. Even if the Court now determined that Slick is not entitled to actual damages, the initial settlement offer was made long before that determination could occur. The *Scott* court explained that offers made that do not satisfy the *entirety* of a plaintiff's demand *at the time the offer is made* do not render a plaintiff's case moot.[13] *See Scott*, 740 F.3d at 1127. Thus, PRA's argument that the case is moot, regardless of whether PRA is entitled to summary judgment on Slick's claim for actual damages, is unavailing.

### B.    Evidence Supporting Slick's Actual Damages Claim

PRA contends Slick has not put forth sufficient evidence to support a claim for actual damages of emotional distress.[14] R. 96 at 20-21. The Seventh Circuit has "maintained a strict standard for a finding of emotional damages because they are so easy to manufacture." *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422

---

[13] In light of this standard, it would appear that a defendant's offer in a case involving a plaintiff who alleges emotional distress could never moot the case unless the plaintiff alleged a specific dollar amount in the complaint.

[14] PRA also argues that the evidence is not sufficient to demonstrate causation due to the fact Slick was pursued by other debt collection agencies around the same time. R. 106 ¶¶ 48-51. The Court disagrees. This is an issue for the jury and does not warrant summary judgment on the issue in PRA's favor.

F.3d 603, 609 (7th Cir. 2005). Accordingly, "when the injured party's own testimony is the only proof of emotional damages, [s]he must explain the circumstances of [her] injury in reasonable detail; [s]he cannot rely on mere conclusory statements." *Id.* (internal quotation marks omitted). Thus, "bare allegations by a plaintiff that the defendant's conduct made [the plaintiff] 'depressed,' 'humiliated,' or the like are not sufficient to establish injury unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003).

To satisfy her burden, Slick provided the Court with a form she filled out on September 12, 2012, that is presented as an affidavit, though it looks more like a generalized survey. *See* R. 91-3. The form begins, "I have suffered from the following due to, or made worse by, the actions of the Defendant's debt collection activities," and then lists fifteen different symptoms, feelings, or effects with the opportunity for Slick to circle "YES" or "NO." *Id.* Slick circled "YES" on thirteen of the fifteen items, including sleeplessness, nervousness, depression, chest pains, feelings of hopelessness and guilt, restlessness or irritability, and negative impact on her relationships. *Id.* The form also provided Slick with space to explain "[o]ther physical or emotional symptoms [she] believe[d] [were] associated with abusive debt collections activites." *Id.* In response, Slick attached a letter in which she described the general history of receiving a letter from PRA claiming she owed them $19,000. *Id.* She also explained that she "started shaking and crying with the thought of

losing [her] home and being sued along with other consequences" and "was extremely shaken and scared." *Id.* Additionally, Slick testified at her deposition that she has taken various prescription medications, R. 106 ¶ 57; spoke to a "psychotherapist" at some point so she "ha[d] someone to talk to" and could discuss her various "problems," R. 76 at 102:15-24; and has had various health issues that began around 1996 and got worse in the 2000's, *id.* 108:5-9, including "spine, knee, arm, hand, finger, and neck issues," R. 106 ¶ 56.

This is not a case where the facts would seem to be so obvious "that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Denius*, 330 F.3d at 929. PRA never threatened to sue Slick, no associates or employees of PRA ever showed up at Slick's home to collect the debt, and the only time a PRA employee ever spoke to Slick directly was when Loudin was also on the call, calling PRA on behalf of Slick. The majority of cases that have allowed an emotional distress claim to survive either (1) involved similar examples of a debt collection agency's direct conduct with a plaintiff, or (2) included evidence of the plaintiff's emotional distress from people who knew and interacted with the plaintiff. *See Maremont v. Susan Fredman Design Group, Ltd.*, No. 10 C 7811, 2014 WL 812401, at *7 (N.D. Ill. Mar. 3, 2014) (denying summary judgment on the defendant's emotional distress claim because the plaintiff "provided her own declaration in addition to those of her husband and father attesting to their personal observations of [the plaintiff's] emotional condition after the events in question"); *Smith*, 2014 WL 1097701, at *3-4 (concluding that the plaintiff failed to

put forth sufficient evidence of actual damages after analyzing numerous cases where courts have allowed actual damage claims to go forward and cases where courts have not).

The Court is mindful of the cases rejecting claims for emotional distress and actual damages. *See Smith*, 2014 WL 1097701, at *3 (collecting cases); *Crafton v. Law Firm of Johnathan B. Levine*, 957 F. Supp. 2d 992, 1001-02 (E.D. Wis. 2013) (granting summary judgment in favor of the defendant on plaintiff's actual damage claim because there was insufficient evidence of both emotional distress and causation). However, the person who can best describe the effects of PRA's activities on Slick is Slick herself. Others may surmise that Slick felt a certain way and describe Slick's conduct after the events in question, but arguably, Slick alone knows for sure. That is why the Seventh Circuit has repeatedly explained that "evidence presented in a 'self-serving' affidavit or deposition is enough to thwart a summary judgment motion." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 175 (7th Cir. 2011); *see Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.' If based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts."). Keeping that in mind, PRA has still set forth a compelling argument, and the Court is presented with a very close question. Even so, the Court is addressing a summary judgment and all factual disputes and inferences must be taken in Slick's favor. Slick has testified to

particular symptoms she has suffered, when she began experiencing them, what she did in an attempt to alleviate them (e.g., spoke to a psychotherapist),[15] and how the events in question have affected her life. That amount of detail, coupled with the fact she saw a medical health professional, *cf. Stevens v. Hous. Auth. of S. Bend, Ind.*, 663 F.3d 300, 308-09 (7th Cir. 2011), allows Slick to defeat PRA's motion for summary judgment on actual damages—albeit barely.

## CONCLUSION

PRA's motion for summary judgment, R.96, is denied, and Slick's motion for summary judgment on liability, R. 73, is granted. A status hearing is set for September 2, 2014, at 9:00 a.m. to discuss a date for a prompt trial on damages. Lead trial counsel should be present.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge


Dated: August 20, 2014

---

[15] Slick did not present any affidavit or evidentiary support from her psychotherapist, though that is not a requirement for actual damages. *See Maremont*, 2014 WL 812401, at *7.