# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DONNA M. SLICK ) | |
| ) | No. 12 C 2562 |
| PLAINTIFF, ) | |
| ) | |
| v. ) | Judge Thomas M. Durkin |
| ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC ) | |
| ) | |
| DEFENDANT. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donna M. Slick alleges that defendant Portfolio Recovery Associates, LLC ("PRA") violated various provisions of the Fair Debt Collection Practices Act ("FDCPA") when it attempted to collect a delinquent debt. The Court previously granted Slick's motion for partial summary judgment, and denied PRA's cross-motion for summary judgment, with respect to Slick's claim that PRA violated 15 U.S.C. § 1692e(5) and e(10). *See* R. 109 (*Slick v. Portfolio Recovery Assoc., LLC*, 12 C 2562, 2014 WL 4100416, at *8 (N.D. Ill. Aug. 20, 2014)). The Court concluded that this was a sufficient basis to award Slick statutory damages of up to $1,000, making it unnecessary to address the parties' arguments addressing other FDCPA provisions. *See id.* at *4 n.6 (Because statutory damages are available per case, not per violation, it "does not matter in what way, or how many times, PRA violated the FDCPA . . . ."); *see also id.* at *5 n.7. In preparation for what the Court believed would be a limited trial on Slick's claim for actual damages, Slick stated that she intended to seek judgment on the claims that the Court did not rule on. The Court

then invited the parties to supplement their summary judgment motions with respect to the undecided claims, and that briefing is now complete. For the following reasons, the Court grants Slick's motion in part, denies it in part, and grants PRA's motion in part, and denies it in part.

## BACKGROUND

The Court will assume that the reader is familiar with its memorandum opinion addressing the parties' original cross motions for summary judgment.

## ANALYSIS

### I. PRA's Motion for Reconsideration

PRA's supplement to its cross-motion for summary judgment is essentially a motion to reconsider the Court's prior ruling. *See* R. 140 at 3-4. "Motions for reconsideration under Rule 54(b) serve the limited function of correcting manifest errors of law or fact." *Ace Hardware Intern. Holdings Inc. v. Masso Expo Corp.*, No. 11 C 3928, 2012 WL 182236, at *1 (N.D. Ill. Jan. 23, 2012). The Court previously held that PRA's dunning letters were misleading because they implied that PRA could legally report Slick's failure to pay the debt to a credit reporting agency and that the failure could appear on her credit report. *See Slick*, 2014 WL 4100416, at *5. The FDCPA provides that a consumer report may not contain "[a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4). This seven-year period

> shall begin, with respect to any delinquent account that is placed for collection (internally or by referral to a third party, whichever is earlier), charged to profit and loss, or subjected to any similar action, upon the expiration of the 180-day period beginning on the date of the

> commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action.

*Id.* at § 1681c(c)(1). The "effective result [of the statute] is a seven and one-half year period from the original delinquency." *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 940 (7th Cir. 2007). Capital One reported Slick's account as "delinquent" on December 2, 2003, meaning that it became unreportable (or "obsolete") on June 3, 2011. *Slick*, 2014 WL 4100416, at *6. The Court rejected PRA's argument that the reporting period commenced when Capital One charged-off Slick's account on December 3, 2004, which would have rendered her debt still reportable. *Id.* The reporting period is measured from the "commencement of the delinquency" immediately preceding the triggering event (i.e., the "collection activity, charge to profit and loss, or similar action"). The delinquency in this case occurred on December 2, 2003. *Id.*

In its supplemental brief, PRA contends that the relevant dates are instead: (1) December 3, 2004 (the date Capital One charged-off Slick's account); and (2) July 28, 2011 (the date PRA purchased the account). R. 140 at 5. Capital One charged-off Slick's account before PRA purchased it, so—according to PRA—the limitation period started running on December 3, 2004 and expired on June 3, 2012. *Id.* In support of this argument, PRA contends that the Court "incorrectly relied on a partial quote in [*Gillespie*]" in ruling that the delinquency date triggered the limitation period, "whereas the full quote supports [PRA's] position." *Id.* at 3. Here is the relevant language from *Gillespie*:

> The FCRA prohibits a consumer reporting agency from providing a consumer report containing "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4). The seven year period begins to run 180 days *after the account is placed in collection or charged off by the creditor* so the effective result is a seven and one-half year period from the original delinquency.

*Id.* at 4 (quoting *Gillespie*, 484 F.3d at 940 (footnote omitted; emphasis in PRA's brief)). The plaintiffs in *Gillespie* claimed that the "Date of Last Activity" field in their Equifax credit reports violated 15 U.S.C. § 1681g(a)(1), which requires such reports to "clearly and accurately disclose . . . all information" in the consumer's credit file. *Gillespie*, 484 F.3d at 939-41. In the "Last Activity" field, Equifax listed "both positive payment information and negative delinquency data":

> Equifax lists the date of the consumer's last activity for the reported account in the Date of Last Activity field. If the account is delinquent, with no subsequent activity, then the Date of Last Activity reflects the date of delinquency. If the consumer has been paying the account, the Date of Last Activity reflects the last payment. In the case of a previously delinquent account in which the consumer has started to make subsequent payments, the last payment by the consumer replaces the delinquency date in the Date of Last Activity field.

*Id.* at 939, 942. In a separate disclosure, Equifax explained that "Collection Accounts" remain in a debtor's credit file for seven years "measured from the date in your credit file shown in the 'date of last activity field' accompanying the particular credit or collection account." *Id.* at 940. The plaintiffs argued, and the Seventh Circuit agreed (construing the evidence in the light most favorable to the plaintiffs on appeal of the district court's order granting Equifax's summary judgment motion), that this language was unclear because it suggested that an intervening payment on a delinquent account would reset the limitation period. *Id.* at 942. As

such, "the negative credit history relating to the prior delinquency would presumably remain within the consumer's credit file despite the fact that the consumer faces a new seven and one-half year period before the information is removed from her file." *Id.*

Viewed in the context of the entire decision, it is clear that the Seventh Circuit did not hold that the 7-year reporting period limitation is *measured* from the date that the creditor charges off the account. On the contrary, the statute plainly measures the reporting period from the account's delinquency date, whether the triggering event is: (1) collection activity; (2) a charge to profit and loss; or (3) a "similar action." In this case, the delinquency immediately preceding PRA's collection activity (and Capitol One's decision to charge-off the account) occurred on December 2, 2003. The reporting period expired on June 3, 2011. PRA's letters to Slick in August and September 2011 implied that it could legally report her delinquent account and that the account would appear on her credit report, which was "both false and misleading." *Slick*, 2014 WL 4100416, at *7. The Court denies PRA's motion to reconsider its order granting Slick's motion for summary judgment on her § 1692e(5) and e(10) claims. *See id.* at *5.

## II. The Parties' Cross Motions For Summary Judgment on Slick's § 1692e(2) Claim

In her supplemental brief, Slick argues that PRA's letters violated § 1692e(2), which prohibits debt collectors from making a "false representation of . . . the character, amount or legal status of any debt." 15 U.S.C. § 1692e(2)(A). In *McMahon v. LVNV Funding, LLC*, the Seventh Circuit held that "an unsophisticated

consumer could be misled by a dunning letter for a time-barred debt, especially a letter that uses the term 'settle' or 'settlement.'" 744 F.3d 1010, 1022 (7th Cir. 2014). *McMahon* involved consolidated appeals challenging letters seeking to collect time-barred debts. *Id.* at 1012-13. The plaintiff in *McMahon* received a letter from the defendant stating, "We are pleased to extend to you an offer to settle your account in full for $233.99. This represents savings of 60% of your balance." *Id.* at 1013. "The letter said nothing about when the debt was incurred, and it contained no hint that the four-year statute of limitations applicable in Illinois had long since expired." *Id.* The district court in *McMahon* dismissed the plaintiff's claim as moot in light of a settlement offer from the defendant. In the other case, *Delgado v. Capital Management Services, LP*, the plaintiff received a letter from the defendant stating that the defendant "is authorized to accept less than the full balance due as settlement of the above account. The settlement amount of $721.24, which represents 30% of the amount presently owed, is due in our office no later than forty-five (45) days after receiving this notice. We are not obligated to renew this offer." *Id.* at 1014. The district court in *Delgado* denied the defendant's motion to dismiss, after which the Seventh Circuit granted an interlocutory appeal. *Id.* The Seventh Circuit reversed the district court's order in *McMahon* dismissing the complaint as moot, *see id.* at 1019, and affirmed the district court's order in *Delgado* denying the defendant's motion to dismiss, *id.* at 1022.

The Seventh Circuit reasoned that "if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that

the debt is legally enforceable . . . the collector has violated the FDCPA." *Id.* at 1020. The court rejected the requirement, adopted by the Third and Eighth Circuits, that the letter must threaten litigation to be actionable. *Id.* To illustrate the grounds for its disagreement with those circuits, the Seventh Circuit posited the following hypothetical:

> In [the Third and Eight Circuits'] view, if a dunning letter on a time-barred debt states that the collector could sue but promised not to, that letter would not violate the FDCPA, since no litigation was actually threatened (and indeed was expressly rejected). On its face, that may seem reasonable, but closer examination reveals why it is not. The plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation, including those about the character or legal status of any debt. If a debt collector stated that it could sue on a timebarred debt but was promising to forbear, that statement would be a false representation about the legal status of that debt.

*Id.* at 1020-21. The court reasoned that the defendants' letters were more misleading than the hypothetical letter promising not to forbear. *Id.* at 1021 ("In any event, the case before us is nowhere near that line."). "Neither LVNV nor CMS gave a hint that the debts they were trying to collect were vulnerable to an ironclad limitations defense." *Id.* The fact that the letters "contained an offer of settlement makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently reset the limitations period and made herself vulnerable to a suit on the full amount. That is why those offers only reinforced the misleading impression that the debt was legally enforceable." *Id.*

Judge Gettleman relied on *McMahon* in a recent decision granting summary judgment against PRA in case involving a letter similar to the *McMahon* court's

hypothetical. *See Pantoja v. Portfolio Recovery Assoc., LLC*, No. 13 C 7667, 2015 WL 848568, at *2 (N.D. Ill. Jan. 14, 2015). PRA's letter in that case stated that "[b]ecause of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." *Id.*; *cf. McMahon*, 744 F.3d at 1020-21. Judge Gettleman held that this language was clearly misleading "because it does not tell the consumer that the debt is time-barred and defendant cannot sue plaintiff to collect it, rather, it implies that defendant has chosen not to sue. Nor does it tell plaintiff that the effect of making (or agreeing to make) a partial payment on a time-barred debt is to revive the statute of limitations for enforcing that debt." *Id.* PRA's letters in this case do not contain the same disclaimer, but they likewise fail to disclose that the debt was time-barred under Maryland's three-year statute of limitations, *see* Md. Code, Courts and Judicial Proceedings, § 5-101, and that a partial payment would revive the debt. *See Columbia Ass'n, Inc. v. Poteet*, 23 A.3d 308, 320 (Md. App. Ct. 2011) ("Maryland law has long recognized that an acknowledgment of a debt barred by the statute of limitations removes the bar and revives the remedy."); *see also* R. 31 ¶¶ 54-57.

PRA opposes Slick's § 1692e(2) claim on two grounds, one procedural and the other substantive. Procedurally, PRA points out that Slick did not seek judgment on that claim in her original motion, and contends that her complaint does not provide adequate notice of that claim. R. 152 at 3-4. The Court gave the parties leave to supplement their summary judgment motions because it might narrow the issues for trial. Thus, the fact that Slick did not seek judgment on her § 1692e(2) claim in

her original motion is irrelevant. PRA's claim that it lacked notice of Slick's claim is meritless. Slick alleged in her First Amended Complaint that: (1) any lawsuit on her Capital One debt would be barred by the three-year statute of limitations, R. 27 ¶¶ 54-55; (2) PRA's August 9, 2011, letter did not disclose "the date of the transactions giving rise to the alleged debt" or that "the debt is barred by the statute of limitations," *id.* ¶¶ 56-57; and (3) it was PRA's "policy and practice" to send debt-collection letters omitting this information. *Id.* at ¶¶ 58-59. Also, PRA previously argued that it was entitled to summary judgment on Slick's claim that it violated "Section 1692e, *e(2)*, e(5), e(10), and f by failing to inform her that it could no longer file a collection suit against her." R. 96 at 10 (emphasis added). PRA was clearly on notice of Slick's claim.

Substantively, PRA argues that Slick has failed to provide extrinsic evidence to support her claim that its communications would mislead an unsophisticated consumer. The Seventh Circuit has established three categories of FDCPA cases: (1) "cases involving statements that plainly, on their face, are not misleading or deceptive";[1] (2) cases "involv[ing] statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer"; and (3) cases "involving plainly deceptive communications." *See Ruth v. Triumph P'ships*, 577 F.3d 790, 800-01 (7th Cir. 2009). FDCPA claims in the second category must be supported by "extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or

---

[1] The Court concludes that PRA's communications are not "plainly, on their face . . . not misleading," and PRA has not argued otherwise.

deceptive." *Id.* at 800. Whereas, plaintiffs alleging claims that fall into the third category need not produce extrinsic evidence "to prove what is already clear." *Id.* at 801. As PRA points out, *McMahon* did not hold that a letter that is silent regarding the statute of limitations, and the consequences of a partial payment on a time-barred debt, is so clearly misleading that extrinsic evidence is unnecessary. On the other hand, that issue was not before the court because *McMahon* and *Delgado* were still at the pleadings stage.

The Court concludes that extrinsic evidence is unnecessary in this case to show that PRA's communications would mislead an unsophisticated consumer. In *Pantoja*, the court persuasively reasoned that PRA's letter in that case was plainly misleading on its face, and therefore extrinsic evidence was unnecessary. 2015 WL 848568, at *3 ("Upon receipt of the letter the only reasonable conclusion that an unsophisticated consumer (or any consumer) could reach is that defendant was seeking to collect on a legally enforceable debt, even if defendant indicated that it chose not to sue."). And as the Seventh Circuit suggested in *McMahon*, a letter that is completely silent on the subject is even more misleading. *See McMahon*, 744 F.3d at 1021 ("Neither LVNV nor CMS gave a hint that the debts they were trying to collect were vulnerable to an ironclad limitations defense"). The *McMahon* court expressly declined to hold that "it is automatically improper for a debt collector to seek re-payment of time-barred debts; some people might consider full debt re-payment a moral obligation, even though the debt has been extinguished." 744 F.3d at 1020. But there is nothing in PRA's first letter to indicate that the debt was *not*

legally binding, and it strikes the Court as far-fetched to suppose that unsophisticated consumers assume that debt-collection agencies asking for payment are really just appealing to the consumers' sense of moral duty. As the Seventh Circuit noted in *McMahon*, the Federal Trade Commission and the Consumer Financial Protection Bureau "have found to the contrary that most consumers do not understand their legal rights with respect to time-barred debts." 744 F.3d at 1021. In subsequent discussions over the telephone, PRA employees used the words "settle" or "settlement" with respect to payments on the debt, *see* R. 106 ¶ 35, and PRA's September 7, 2011 letter is similar. *See* R. 27-1 at 18 ("This letter confirms your arrangement to make the following payment(s) to *settle* this account.") (emphasis added). The letter goes on to state that "[s]hould you miss any of the payments described herein, this payment plan may become null and void." *Id.*; *see also id.* ("We are not obligated to renew this offer."). In fact, the real risk for the consumer is *making* any payments on the debt and thereby reviving it. *See Pantoja*, 2005 WL 848568, at *3 ("Nor would a consumer, sophisticated or otherwise, likely know that a partial payment would reset the limitations period, making that consumer vulnerable to a suit on the full amount.").[2]

---

[2] PRA argues that, "as explained in *Pantoja*, Defendant does not revive the statute of limitations; it owns the accounts it collects upon, and it does not sell or transfer its accounts. If the plaintiff had made a payment (which she did not and which she never intended to do), she would *not* have owed the full balance she incurred." Judge Gettleman characterized this argument as "pure sophistry," *Pantoja*, 2015 WL 848568, at *2, and the Court agrees. "The debt is revived by operation of law, not at defendant's election." *Id.*

In sum, the Court concludes that PRA's communications with Slick were plainly misleading. Thus, Slick is entitled to summary judgment on her claim that PRA violated § 1692e(2)(A) by falsely representing the legal status of the debt.

## III. The Plaintiff's § 1692g Claim

The parties also seek summary judgment on Slick's § 1692g claim. Within 30-days after an initial communication from a debt collector, a consumer may dispute the debt and/or request the name and address of the original creditor. 15 U.S.C. § 1692g(b). After receiving such a dispute/request, the debt collector must "cease collection of the debt, or any disputed portion thereof, until [it] obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." *Id.* It is undisputed that PRA sent the September 7, 2011 letter to Slick after it received her August 30, 2011 verification request letter and after it had entered her letter in its computer system. Nevertheless, PRA argues that it is entitled to summary judgment because this claim is "manufactured." R. 96 at 17. The fact that Debi Louden asked for the letter (albeit five days before PRA sent it) is an extenuating circumstance, but it isn't grounds to excuse a clear violation of the statute. The FDCPA contemplates communications between the debt-collector and the consumer during the 30-day verification period. *See* 15 U.S.C. § 1692g(b) ("Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section . . . ."). During that

time, a consumer may initially indicate his or her intention to pay the debt. But once the debt collector receives a verification request, it must "cease collection of the debt." *Id.* There is no basis in the statute's language to create an exception under these circumstances.

In the alternative, PRA argues that it is not liable because it committed a good-faith mistake. Section 1692k(c) of the FDCPA creates an affirmative defense for "bona fide errors":

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. §1692k(c). In order to prevail on this defense, PRA must show that: (1) the "FDCPA violation was not intentional"; (2) the violation "resulted from a bona fide error"; and (3) "it maintained procedures reasonably adapted to avoid any such error." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). With respect to the first element of the defense, a "debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Id.*

PRA's argument is devoted almost entirely to the third element of the defense. *See* R. 96 at 17-19. It trains its employees to comply with the FDCPA, *see* R. 106 ¶¶ 17-20, and specifically trains them to make a notation in the consumer's file if the consumer asks for verification. "Upon receipt of a written request for validation of an account from a debtor, the collector is to note the account with the

result code 'DSP' and to change the status of the account to 'DISP.'" *Id.* ¶ 21. After the collector applies the "DSP" result code, "the account is placed with PRA's dispute department, and PRA's collector cannot initiate any written or verbal communication with the debtor on that account until the Disputes department's investigation is complete." *Id.* ¶ 28; *see also* R. 91-2 ¶ 37 (Decl. of Tara Privette). In this instance, the collector did not update Slick's file with the result code "DSP." R. 96 at 19.

PRA essentially collapses the three elements of the bona fide error defense into one; *i.e.*, because it provides training and guidelines to its collectors, any deviation from that guidance must be unintentional and undertaken in good faith. It has not provided testimony from anyone with firsthand knowledge of the way that PRA handled Slick's account. And it concedes that this person would have known that Slick had made a verification request. *See* R. 90 ¶ 37. It would be pure speculation to conclude that PRA's employee (or employees): (1) did not intentionally violate § 1692g; and (2) made a good-faith mistake. Speculation is not enough to survive summary judgment. *See Herzog v. Graphic Packaging Intern., Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (the nonmoving party is entitled to all reasonable inferences in its favor, but "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion") (citation and internal quotation marks omitted). Slick's motion for summary judgment on her § 1692g claim is granted, and PRA's motion for summary judgment on that claim is denied.

## IV. Slick's Other Claims

Slick's complaint also alleges that PRA violated § 1692c(b), by sending the September 7, 2011 letter to Louden without plaintiff's consent (*see* R. 27 ¶ 53), and § 1692f, which bars debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." *See* R. 27 ¶¶ 63, 65-66. Slick has abandoned her § 1692c(b) claim by failing to respond to PRA's arguments addressing that claim. *See* R. 96 at 3; R. 105; R. 107 at 2. She has likewise failed to develop any argument supporting her claim under § 1692f. *See* R. 107 at 2. Thus, the Court grants PRA's motion for summary judgment with respect to Slick's § 1692c(b) and § 1692f claims.

## Conclusion

For the foregoing reasons, the Court grants Slick's renewed motion for summary judgment (R. 73) in part and denies it in part. Her motion is granted with respect to her claims that PRA violated 15 U.S.C. §§ 1692e(2) and 1692g. Her motion is denied insofar as she sought summary judgment on her 15 U.S.C. § 1692f claim. The Court grants PRA's renewed cross-motion for summary judgment (R. 96) in part and denies it in part. The motion is granted with respect to Slick's claims that PRA violated 15 U.S.C. §§ 1692c(b) and 1692f. The motion is denied with respect to Slick's claims under 15 U.S.C. §§ 1692e(2) and 1692g. The Court also denies PRA's motion to reconsider its memorandum opinion and order dated August 20, 2014, R. 140. At the status hearing set for July 1, 2015, a trial date will be set to

hear plaintiff's complaint as to damages under 15 U.S.C. §§ 1692e(2), e(5), e(10), and 1692g.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: June 30, 2015